## *In re* DEPUTY MARSHALS.[1]

### (*Circuit Court, E. D. Missouri.* November 4, 1884.)

1. ELECTIONS — APPOINTMENT OF SPECIAL DEPUTY MARSHALS — SECTION 2021, REV. ST., CONSTRUED — CONSTITUTIONAL LAW.

   Section 2021 authorizes the appointment of special deputy marshals under the circumstances therein specified, whether supervisors of elections have been appointed or not, and is constitutional.

2. SAME — DISCRETION OF MARSHAL.

   *Semble*, that it is for the marshal to determine, when requested to appoint special deputies, whether their appointment is necessary or not.

3. SAME — DUTIES OF SPECIAL DEPUTIES.

   *Semble*, that where no supervisors of elections have been appointed, deputy marshals may, without process, arrest any one who votes or attempts to vote illegally, and may forcibly resist efforts to drive people away from the polls, and keep order, but they have no authority to prevent any one from voting, nor can they interfere with judges of elections or clerks in the discharge of their duties.

A petition signed by a number of citizens having been presented to Mr. J. E. D. Cousins, United States marshal for the Eastern district of Missouri, requesting him to appoint special deputies to attend the polls during the general election to be held November 4, 1884, he appeared in court on November 3, 1884, with a number of deputies

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

whom he desired to have sworn in. James Carr, David P. Dyer, and Graham Frost, attorneys, thereupon objected to the swearing in of such deputies upon the ground that the act providing for the appointment of special deputies is unconstitutional, and, moreover, only permits the appointment of such deputies in cases where supervisors of elections have been appointed.

The Revised Statutes of the United States (sections 2011-2020) provide for the appointment of supervisors of elections by United States circuit courts when their appointment is applied for as therein provided, "prior to any registration," and authorizes and requires them "to attend at all times and places fixed for the registration of votes," and "at all places for holding elections," and prescribe their duties. Section 2021 further provides that "wherever an election at which representatives or delegates in congress are to be chosen is held in any city or town of twenty thousand inhabitants or upwards, the marshal for the district in which the city or town is situated shall, on the application in writing of at least two citizens, etc., appoint special deputy marshals, whose duty it shall be, when required thereto, to aid and assist the supervisors of election in the verification of any list of persons who may have registered or voted; to attend in such election district or voting precinct at the times and places fixed for the registration of voters, and at all times and places when and where the registration may by law be scrutinized and the names of registered voters be marked for challenge; and also to attend, at all times for holding elections, the polls in such district or precinct." Section 2022 provides that "the marshal and such special deputies shall keep the peace, and support and protect the supervisors of elections in the discharge of their duties, and preserve order at such places of registration and at such polls; prevent fraudulent registration and fraudulent voting thereat, or fraudulent conduct on the part of any officer of election, and * * * take into custody, with or without process, any person who commits or attempts or offers to commit any of the acts or offenses prohibited herein, or who commits any offense against the laws of the United States," etc.

*James Carr, David P. Dyer,* and *Graham Frost, pro se.*

BREWER, J., (*orally.*) This is rather an informal proceeding, and yet it may be fair, and probably is, for us to state the views that we have of these questions. In reference to the construction of the act, my brother TREAT and I differ. I shall not undertake to express his views, because he can do so much more forciby than I can, and more clearly. I will simply state the conclusion to which I have come from my examinations during the last week, for my attention was called to this matter only a week ago by your marshal. I do not think that the appointment of deputy marshals depends upon the fact that supervisors have been heretofore appointed. As I read that statute there are two separate matters provided for: the appointment of supervisors, which is done by the court, and the appointment of deputy

marshals, which is done by the marshal, and which is done whenever an application is made by a certain number of citizens. Though the court should have appointed supervisors, it would not follow from that that the marshal had any authority to appoint deputy marshals. They do not follow as a matter of course. They are not part of the machinery which is set in motion by the appointment of supervisors. You may appoint all the supervisors asked. They may be qualified and discharge their duties. Unless the marshal is requested to appoint he has nothing to do.

Section 2021 provides that upon the application of certain citizens the marshal shall act; not that whenever supervisors have been appointed the marshal shall appoint deputies to assist them, but that whenever a certain application is made he shall appoint deputies. Now, as to that matter, my brother TREAT differs from me. He will give his views directly. While I think the marshal had the right to appoint deputy marshals, whether it was a wise policy or not was for him to determine. Although a comparative stranger, as I am, and not qualified to express a very clear judgment, perhaps, as to whether it was wise or not, yet, from the past reputation of this city, I do not think any one need to anticipate trouble at the coming election. This city has maintained a good reputation in the past, and from my knowledge of the character of the people whom I have met I am led to think there will be no trouble in the future. But that is a matter for the marshal himself. He is better posted as to the situation here than I am.

I am free to say that I think these instructions which he has issued go too far. If supervisors were in existence, if they had been appointed to take charge of the election, their functions would be much vaster than those of deputy marshals, and when there are no supervisors the duties of the deputy marshals are very limited in their nature. I do not think that they can interfere with any judge or clerk of election. Indeed, I doubt whether, as this is a state election,—although a president and congressmen are to be voted for,—I doubt whether congress has the power to vest in supervisors or any one else the power to take the judges and clerks of election away from a precinct and intercept the election. But whether it has or not is immaterial here. The supervisors are not in existence, and I am very clear that the deputy marshals have no power to interfere with either a judge or a clerk of election in any way, shape, or manner. They have no power to demand admittance into the election-room. That power is committed simply to supervisors. They must stand outside, along with other people. As to their functions, what are they? To preserve order at the place of registration and at the polls. That is one thing. To take into custody, with or without process, any person who commits or attempts to commit any of the acts or offenses prohibited in the federal statutes.

Under that provision, I think that about all they can do is, if a

man offers to vote and does vote illegally, they are not obliged to wait for process, but can arrest that man. That is not interfering with the election. It is simply arresting a man who is an illegal voter, or who is attempting to cast an illegal vote, who has violated the laws of the United States and is liable to prosecution. They may help to keep the peace. I do not mean by that if there happens to be a street fight they can become policemen to arrest the men thus engaged. That it is a duty that devolves upon the state authorities, to punish all assaults and batteries, and prevent street fights. But they may interfere to keep the peace if crowds should come to drive away voters from the polls. They may resist that, because that is necessary to preserve the elective franchise to those who are entitled to it; but when you go beyond that, it seems to me, they have nothing in the world to do. As to determining who is entitled or who has the right to vote, that is for the judges of election. Whether they decide rightfully or wrongfully is a matter with which the deputy marshals have nothing to do. They are not vested with judicial functions to arrest or to interfere with the judge or the clerk in the discharge of their duties. They can stay outside the polls. While they may arrest a man who casts an illegal vote, or attempts to cast an illegal vote, and take him before a United States commissioner, or, if there is an attempt to drive people away from the polls and prevent them from voting, they may resist all such efforts and thereby keep the peace; yet, whenever they go beyond that, they transcend their lawful authority. So, I conceive, these instructions are liable to misconstruction. A marshal might think, under these instructions, that if a judge should refuse to receive a vote which he thought ought to be received, he could arrest the judge and take him away. That cannot be done. The judges are amenable to the state and federal law, and if they act wrongfully may be punished; but you cannot stop an election. You cannot take them away from the polls. You cannot arrest them during the day, or until they have finished the count. They have a right to stay at the polls, and the deputy marshals have nothing whatever to do with them. So you can see the duties of these deputy marshals are limited in their nature, and, if the city maintains its ordinary reputation for peacefulness, it is probable they will have as little to do with the election as I shall.

*Mr. Dyer.* There is one matter that I would like to call the attention of the court to. As I have said, voters are registered in the city. The question is, who is to decide whether, when a man offers to vote, he is an illegal voter or not?

*The Court,* (Judge BREWER.) Unquestionably, the judges of election decide that entirely. The marshals have nothing to say as to whether that vote shall go in or not. If a deputy marshal thinks a vote is illegal he has no power to interfere. He can arrest the man after he has voted, and take him before a United States commissioner and have him examined; but he cannot arrest the man when in the act

of voting, or say that he shall not vote. This is a question for the judges.

TREAT, J., (orally,) *dissenting.* It was not my purpose, as the circuit judge is here, whose views, of course, override any I may express, to consider this matter. An application was made to me, it was said, though I did not hear it, to swear in these marshals. Looking back to the old section, 782, I declined. I still decline.

1. Because I deny, *toto cœlo,* that the marshal, under the circumstances presented to this court, has the right to appoint special deputy marshals for the purposes stated. The act is an entirety, and it is to me a novel method of construction that you can tear one section out of the body of an act and make a new body of law in respect thereto. The act is clear in itself. The application must be made to the circuit judge at the time sitting. What is the business of the supervisors therein to be named? To supervise the registration. There is a registration law here. If any frauds are to be committed, primarily, they would be committed through fraudulent registration. Hence the act prescribes, before the registration closes, upon application to the circuit judge, the supervisors shall be appointed therefor. Having been appointed, they shall supervise the registration and attend the polls, being of opposite parties, to preserve impartiality of proceedings. They may proceed to act in connection with, and have as aids thereto, marshals. But who is to conduct this as far as the federal government is concerned? Section 2026 states that the chief supervisor shall issue his directions and instructions in regard to the duties of supervisors, etc. Nothing of the kind has been done. How would the district judge, called upon to administer an oath to one of these special deputy marshals, administer such an oath? What is the oath that he is to administer? To aid a supervisor, and do sundry and divers other things. But there are no supervisors. Is not that a fallacy on the face of it, and an absurdity, to ask them to swear to do a thing that is an impossibility? So you may run through the whole of the act. From the beginning to the end it is a system of itself, beginning with the application to the circuit judge to appoint a supervisor, and the details are all in the act in regard to the registration lists, which the chief supervisor is to have presented to him, so that he may, through the other supervisors, see at every election precinct whether a man who is voting has the right to vote. The whole machinery is perfect in itself. But if you attempt to tear out of the whole body of the act and commit to a marshal an arbitrary and absolute authority, irrespective of all these matters, such as is contemplated by this proceeding, then, as I think, you have not what congress contemplated in regard to the matter, but you have created a new and arbitrary operation of the law. I cannot, by any mode of reasoning by which I can determine the construction of this act, come to any

other conclusion than that the act of the marshal in appointing these special deputies is utterly void from the beginning, under the present condition of affairs, and every deputy marshal who acts there under his appointment is no more than any private citizen who appears, and must take the consequences of his conduct; and if he were to be brought before me, with my present views of the case, I should treat him as I would any private citizen who was interfering with matters in which he had no official concern.

That is my view positively and clearly. Then, again, in regard to the question of accounting which will follow. The marshal may present his accounts here, and I am free to say, if I have to pass upon them, I shall not allow one sixpence for any such purpose, because I believe he has no authority to act under any circumstances whatever. I think it would be a perfect usurpation. I think they would be outside of the law. That is my judgment, and I am as clear upon that point as upon anything I ever had to determine judicially.

There is another question underneath all this about which I shall have nothing to say, but if any gentleman wishes to know the law in regard to it I would refer him to the case of *U. S.* v. *Ferreira*, 13 How. 40, which follows the decisions of the United States supreme court from 1792 till the present day. I do not choose to go into that matter, however, but simply to sharply define my own views, which are: that no application having been made to the circuit judge for supervisors of registration, therefore, as there are no supervisors, the marshal has no authority to appoint special deputy marshals with regard to the election, because they are to act as aids of the supervisors, and, there having been no supervisor, the time has gone by when such action can be taken; and I believe all that has been done is absolutely null and void, and that any action taken by these parties will be no more than action taken by a private citizen, and I shall allow no accounts that may be presented to me in payment of their services.

BREWER, J. As I stated, there is a very marked difference of opinion between my brother TREAT and myself, and I knew that I could not express his views as eloquently as he has done.

It was then asked before whom the special deputies should take their oath of office if appointed. Judge BREWER replied that any United States commissioner could administer the requisite oath.